UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| 7241 W. 100th PLACE CORP., | ) | |
| | ) | |
| Plaintiff, | ) | 13 C 4336 |
| | ) | |
| vs. | ) | Judge Feinerman |
| | ) | |
| VILLAGE OF BRIDGEVIEW, an Illinois municipal corporation, and STEVEN M. LANDEK, | ) ) | |
| | ) | |
| Defendants. | ) | |

**MEMORANDUM OPINION AND ORDER**

Plaintiff 7241 W. 100th Place Corp. brought this suit under 42 U.S.C. § 1983 and Illinois law against two defendants—the Village of Bridgeview, Illinois, and Steven Landek, its mayor and Liquor License Commissioner—after the Village rejected Plaintiff's application for a license to serve alcohol at an adult entertainment venue it wishes to establish and operate. Doc. 1. The § 1983 claim, which seeks declaratory and injunctive relief and is brought only against the Village,[*] alleges that the municipal laws invoked by the Village in denying Plaintiff's application violate the First Amendment on their face and as applied to Plaintiff. *Id.* at ¶¶ 31-43. The state

---

[*] The complaint does not expressly say that the § 1983 claim is not brought against Landek, but that is the only plausible conclusion that can be reached. The complaint sets forth the § 1983 claim in two counts, with Count I titled "Declaratory Relief" and Count II titled "Injunctive Relief." Count I alleges that "[t]here is an actual bona fide controversy between Plaintiff and Defendant Village of Bridgeview" regarding the constitutionality of the challenged provisions. Doc. 1 at ¶ 33. No mention is made of Landek, which means that Plaintiff is seeking declaratory relief only against the Village. Likewise, Count II alleges that "Bridgeview has the actual and present ability to continue to enforce the subject Ordinances, and to prohibit Plaintiff from offering constitutionally protected entertainment by refusing to issue licenses and permits to Plaintiff for the operation of its business" and that "[a]ny harm to Defendant Village of Bridgeview resulting from the issuance of an injunction is substantially outweighed by the harm to Plaintiff caused by the depr[i]vation of its cherished First Amendment Rights." *Id.* at ¶¶ 37, 40. Again, no mention is made of Landek, which means that Plaintiff is seeking injunctive relief only against the Village. The complaint does not assert a claim for damages under § 1983.

1

law claim, which seeks damages and which is brought against both the Village and Landek, alleges that Defendants tortiously interfered with Plaintiff's prospective business opportunities. *Id*. at ¶¶ 44-47. Defendants have moved to dismiss the complaint under Federal Rule of Civil Procedure 12(b)(6). Doc. 14. The motion is granted in part and denied in part.

## Background

In considering the motion to dismiss, the court assumes the truth of the complaint's factual allegations, though not its legal conclusions. *See Munson v. Gaetz*, 673 F.3d 630, 632 (7th Cir. 2012). The court must also consider "documents attached to the complaint, documents that are critical to the complaint and referred to in it, and information that is subject to proper judicial notice," along with additional facts set forth in Plaintiff's brief opposing dismissal, so long as those facts "are consistent with the pleadings." *Geinosky v. City of Chicago*, 675 F.3d 743, 745 n.1 (7th Cir. 2012). The following facts are set forth as favorably to Plaintiff as those materials allow. *See Gomez v. Randle*, 680 F.3d 859, 864 (7th Cir. 2012).

Plaintiff is an Illinois corporation with a contract to purchase land in Bridgeview upon which it wishes to establish and operate a cabaret that presents "exotic entertainment" and sells alcohol. Doc. 1 at ¶¶ 1-3, 10. The land purchase contract is contingent upon Plaintiff obtaining a liquor license. *Id*. at ¶ 10. Plaintiff applied to the Village for a liquor license, and the Village denied the application. *Id*. at ¶¶ 12-14. The Village based the denial on Bridgeview Ordinance 04-54 and Section 11-1-7 of the Village Code, which together limit to one the number of liquor licenses that may be granted to adult entertainment businesses in Bridgeview; at the time Plaintiff applied, the single license had already been granted to another establishment. *Id*. at ¶¶ 14, 18 & pp. 9, 14-15. Plaintiff alleges that "the real reason[s]" the Village enacted these provisions are "hostility to the content of the speech in which Plaintiff wishes to engage" and a

desire "to prevent Plaintiff, or any other person or entity, from competing with the one currently existing adult night club [in] Bridgeview [that serves alcohol]." *Id*. at ¶¶ 15, 18; *see also id*. at ¶ 25 ("Bridgeview's ordinances were adopted with a predominantly censorial purpose and without any legitimate governmental reason.").

## Discussion

### I. Section 1983 Claim

Defendants argue that the complaint fails to state a First Amendment claim. "The applicable legal standard" for evaluating First Amendment challenges to laws regulating the ability of adult entertainment businesses to serve alcohol "comes from the '*44 Liquormart* roadmap.'" *Joelner v. Vill. of Washington Park*, 508 F.3d 427, 431 (7th Cir. 2007); *see 44 Liquormart, Inc. v. Rhode Island*, 517 U.S. 484 (1996). "Under that roadmap, a reviewing court proceeds in two stages. First, it must ask if an ordinance that bans alcohol at adult entertainment establishments (1) is passed pursuant to a legitimate governmental power, (2) does not completely prohibit adult entertainment, and (3) is aimed at combating negative secondary effects caused by adult entertainment establishments." *Joelner*, 508 F.3d at 431. If the answer to all three questions at stage one is yes, "then the regulation is constitutional if it survives intermediate scrutiny, meaning it serves a substantial governmental interest, it is narrowly tailored, and reasonable alternative avenues of communication remain available." *Ibid*. "If, on the other hand, a regulation is not aimed at secondary effects (it fails [question] three [of stage one]), strict scrutiny applies. This means that the regulation must be necessary to achieve a compelling state interest and be narrowly tailored to achieve that end." *Ibid*. (citations and internal quotation marks omitted); *see also R.V.S., L.L.C. v. City of Rockford*, 361 F.3d 402, 407-08 (7th Cir. 2004); *Ben's Bar v. Vill. of Somerset*, 316 F.3d 702, 722-23 (7th Cir. 2003).

3

Defendants' attack on Plaintiff's First Amendment claim rests on the premise that the purpose of the challenged provisions is to combat the secondary effects of adult entertainment venues. Doc. 15 at 9, 12-13; Doc. 17 at 6-9. Defendants argue only that the challenged laws survive intermediate scrutiny; they do not contend that the laws survive strict scrutiny, and therefore have forfeited any such argument for purposes of their Rule 12(b)(6) motion. *See Alioto v. Town of Lisbon*, 651 F.3d 715, 721 (7th Cir. 2011); *Fabriko Acquisition Corp. v. Prokos*, 536 F.3d 605, 609 (7th Cir. 2008); *Wojtas v. Capital Guardian Trust Co.*, 477 F.3d 924, 926 (7th Cir. 2007). Accordingly, if the pleadings do not establish as a matter of law that the challenged restrictions were enacted to combat secondary effects, then strict scrutiny applies for purposes of this motion, and if strict scrutiny applies, then Plaintiff's First Amendment claim survives dismissal under Rule 12(b)(6).

The pleadings do not establish as a matter of law that the purpose of the challenged provisions is to combat the secondary effects of adult entertainment venues. As noted above, the complaint alleges that the purpose of the challenged laws was to effectuate the Village's "hostility to the content of the speech in which Plaintiff wishes to engage" and "to prevent Plaintiff, or any other person or entity, from competing with the one currently existing adult night club [in] Bridgeview [that serves alcohol]." Doc. 1 at ¶¶ 15, 18. The allegation that Bridgeview is hostile to adult entertainment-oriented speech is plausible—though, of course, not necessarily correct—because, among other reasons, the challenged provisions strongly disfavor adult entertainment facilities with respect to the number of venues permitted to serve alcohol. *Id*. at p. 10 (Village Code provision allowing seventeen licenses for package sales for off-premises consumption and nine licenses for restaurants). The allegation that Bridgeview wishes to protect the incumbent adult entertainment facility from competition is plausible because there is no basis

4

on the pleadings to definitively conclude that two adult entertainment facilities serving alcohol will cause materially greater secondary effects than one facility. *See City of Ladue v. Gilleo*, 512 U.S. 43, 52 (1994) ("Exemptions from an otherwise legitimate regulation of a medium of speech may … diminish the credibility of the government's rationale for restricting speech in the first place."); *Joelner*, 508 F.3d at 432 ("The district court did not err in finding that the Village enacted Ordinance 01-63, exempting existing operators from the alcohol ban, to protect those operators from competition with [the plaintiff]."); *Ben's Bar*, 316 F.3d at 728 ("as a practical matter, a complete ban of alcohol on the premises of adult entertainment establishments is the *only* way the Village can advance" its "interest in combating the secondary effects resulting from the combination of nude and semi-nude dancing and alcohol consumption"). For either of these reasons, strict scrutiny applies, at least at the Rule 12(b)(6) stage. *See Joelner*, 508 F.3d at 433 ("Because the purpose of the ban on alcohol consumption in newly licensed [adult entertainment] establishments was to prevent competition [against existing adult entertainment establishments, which were permitted to sell alcohol], strict scrutiny applies."); *Ben's Bar*, 316 F.3d at 723 (holding that strict scrutiny applies if the "predominant concerns" motivating the ordinance were "the content of adult [speech]").

Defendants argue that the complaint's allegations regarding the purpose of the challenged provisions are not plausible because the ordinance's preamble states that it was enacted to combat the secondary effects of adult entertainment businesses, cites case law holding that the ordinances reviewed in those cases were enacted to combat secondary effects, and cites a 1989 meta-study issued by the Attorney General of Minnesota finding that adult entertainment businesses have secondary effects. Doc. 1 at pp. 12-13; Doc. 15 at 9. Defendants certainly may present the ordinance's preamble as evidence, at summary judgment or trial, to support their

submission that the challenged laws were designed to combat secondary effects. *See Joelner*, 508 F.3d at 431; *R.V.S.*, 361 F.3d at 409 n.5. But Seventh Circuit precedent holds that such a preamble is not dispositive to an ordinance's purpose when the issue is resolved at an evidentiary hearing. *See Joelner*, 508 F.3d at 432. It necessarily follows that the ordinance's preamble is not dispositive of its purpose on a Rule 12(b)(6) motion, at least where, as here, the pleadings plausibly suggest that the preamble does not accurately recite the ordinance's true purpose.

A reasonable person could read the complaint as possibly attempting to state a due process and equal protection claim. Doc. 1 at ¶¶ 23-24, 29. Erring on the side of caution, Defendants argue that any such due process or equal protection claim should be dismissed. Doc. 15 at 14-17. Plaintiff do not respond to this argument. Accordingly, to the extent the complaint could be read to state due process and equal protection claims, those claims are dismissed. *See* Alioto, 651 F.3d at 721 (noting that forfeiture occurs "where a litigant effectively abandons the litigation by not responding to alleged deficiencies in a motion to dismiss"); *Bonte v. U.S. Bank, N.A.,* 624 F.3d 461, 466 (7th Cir. 2010) ("Failure to respond to an argument—as the Bontes have done here—results in waiver."); *Cincinnati Ins. Co. v. E. Atl. Ins. Co.*, 260 F.3d 742, 747 (7th Cir. 2011) (holding that a party's failure to oppose an argument permits an inference of acquiescence, and "acquiescence operates as a waiver"). And because claims that a plaintiff fails to defend in opposing a Rule 12(b)(6) motion are deemed abandoned, the dismissal is with prejudice. *See Baker v. Chisom*, 501 F.3d 920, 926 (8th Cir. 2007); *Simkus v. United Air Lines, Inc.*, 2012 WL 3133603, at *6 (N.D. Ill. July 31, 2012).

## II. Tortious Interference with Prospective Economic Advantage

To state a claim under Illinois law for tortious interference with prospective economic advantage, a plaintiff must allege "(1) [a] reasonable expectation of entering into a valid business

relationship; (2) the defendant's knowledge of the plaintiff's expectancy; (3) purposeful interference by the defendant that prevents the plaintiff's legitimate expectancy from ripening into a valid business relationship; and (4) damages to the plaintiff resulting from such interference." *Botvinick v. Rush Univ. Med. Ctr.*, 574 F.3d 414, 417 (7th Cir. 2009); *see also Kempner Mobile Electronics, Inc. v. S.W. Bell Mobile Sys.*, 428 F.3d 706, 716 (7th Cir. 2005); *Callis, Papa, Jackstadt & Halloran, P.C. v. Norfolk & W. Ry. Co.*, 748 N.E.2d 153, 161 (Ill. 2001). Defendants focus on the first element, arguing that Plaintiff could not have had a "reasonable expectation" of operating an adult entertainment facility with a liquor license because at all relevant times it was aware that Bridgeview had granted the one available license to another facility. Doc. 15 at 17-18.

In its response brief, Plaintiff argues only that it "has pled facts showing that its application for a liquor license was denied for unconstitutional reasons. These facts are more than sufficient to show Plaintiff's standing to claim to relief [sic] for such actions by Defendants." Doc. 16 at 10. This conclusory response, unsupported by authority and failing to even address the thrust of Defendants' argument, constitutes a forfeiture. *See Humphries v. CBOCS W., Inc.*, 474 F.3d 387, 407 (7th Cir. 2007) ("We agree with the district court's determination that [the plaintiff] waived (forfeited would be the better term) his discrimination claim by devoting only a skeletal argument in response to Cracker Barrel's motion for summary judgment."), *aff'd on other grounds,* 553 U.S. 442 (2008). Even putting aside forfeiture, Defendants are correct. No allegation of the complaint provides any basis to plausibly believe that Plaintiff had a reasonable expectation of being allowed to do something that the law prohibited. *See Shim v. City of Tukwila*, 2009 WL 1058649, at *5 (Wash. App. Apr. 29, 2009) (holding that the plaintiffs failed to show "the existence of a valid business expectancy [in selling

glass pipes] in light of the clear prohibition of [state law] against the sale of glass pipes"); *Conte v. Cnty. of Nassau*, 2013 WL 3878738, at 24 n.36 (E.D.N.Y. July 26, 2013) (holding that there could be no claim for tortious interference with contract with a dissolved corporation because, under New York law, a "dissolved corporation is prohibited from carrying on new business").

**Conclusion**

For the foregoing reasons, Defendants' motion to dismiss is granted in part and denied in part. The § 1983 First Amendment claim survives, while the § 1983 due process and equal protection claims are dismissed with prejudice and the state law tortious interference claim is dismissed without prejudice. If Plaintiff would like to try to replead the tortious interference claim, it must move for leave to file an amended complaint by February 20, 2014. If Plaintiff does not so move, the Village shall answer the surviving portions of the complaint by February 27, 2014.

February 6, 2014

_____
United States District Judge