# UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

7421 West 100th Place Corp.,

      Plaintiff,

      v.

Village of Bridgeview,

      Defendant.

Case No. 13 C 4336

Judge John Robert Blakey

## MEMORANDUM OPINION AND ORDER

In 2004 and 2005, Defendant Village of Bridgeview ("Defendant") or ("the Village") passed Ordinance Nos. 04-54 and 05-11, respectively. Together, the ordinances impose alcohol and location restrictions on new adult establishments, but exempt PoleKatz Chicago Gentleman's Club ("PoleKatz"), the only existing adult establishment in the Village. Unable to open an alcohol-serving adult cabaret, Plaintiff 7421 West 100th Place Corporation ("Plaintiff") seeks a declaratory judgment that Ordinance Nos. 04-54 and 05-11 are unconstitutional under the First Amendment (Count I), as well as other relief, including an injunction enjoining Defendant from further enforcement (Count II).

On October 21, 2015, Plaintiff moved for summary judgment on Count I. Pl.'s Mot. Summ. J. [100]. On February 22, 2016, Defendant responded in kind by cross-moving for summary judgment on Counts I and II. Def.'s Cross Mot. Summ. J. [117]. For the reasons stated below, Plaintiff's motion [100] is granted in part and denied in part; Defendant's cross-motion [117] is denied.

## I.    Legal Standard

Summary judgment is appropriate if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. *Spurling v. C & M Fine Pack, Inc.*, 739 F.3d 1055, 1060 (7th Cir. 2014). A genuine dispute as to any material fact exists if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The party seeking summary judgment has the burden of establishing that there is no genuine dispute as to any material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). A court "is not required to grant summary judgment as a matter of law for either side when faced with cross-motions for summary judgment." *Crespo v. Unum Life Ins. Co. of Am.*, 294 F. Supp. 2d 980, 991 (N.D. Ill. 2003) (citing *Market St. Assocs. Ltd. P'ship v. Frey,* 941 F.2d 588, 590 (7th Cir. 1991)). Rather, the court must "evaluate each motion on its merits, resolving factual uncertainties and drawing all reasonable inferences against the movant." *Id.*

## II.   Background[1]

### A.    The Applicable Ordinances

#### 1.    Ordinance No. 04-54

On September 15, 2004, Defendant enacted Ordinance No. 04-54. DSOF [120] ¶ 12. Section 1 of Ordinance No. 04-54 amended the Village of Bridgeview's

---

[1] The facts are taken from the parties' Local Rule 56.1 statements and accompanying attachments. "PSOF" refers to Plaintiff's Local Rule 56.1 Statement of Facts [112], with Defendant's responses [119] cited as "R. PSOF." "PSOAF" refers to Plaintiff's Local Rule 56.1 Statement of Additional Facts [134], with Defendant's responses [144] cited as "R. PSOAF." "DSOF" refers to Defendant's statement of undisputed facts [120], with Plaintiff's responses [136] cited as "R. DSOF."

Municipal Code in two material respects. *Id*. Ex. H at 6. First, Article 10-52-3 of Section 1 prohibited the "sale, use, or consumption of alcoholic beverages on the premises of an adult use" (hereinafter the "Ordinance No. 04-54 alcohol restriction"). *Id*. Second, Article 10-52-4 mandated that no "adult use may be located within 1,000 feet of any premises licensed to serve alcohol beverages" (hereinafter the "Ordinance No. 04-54 location restriction"). *Id*.

In the Preamble of Ordinance No. 04-54, the Village proclaimed that the alcohol and location restrictions were necessary to ameliorate "the adverse secondary effects of adult uses." *Id*. at 3. These feared secondary effects included, *inter alia*, "an increase in crime," the "diminution of property values in the surrounding area," and an "increase in incidents of public indecency[.]" *Id*. at 3-4. The Village grounded its conclusions in, among other authorities, three published federal cases: *Renton v. Playtime Theaters*, 475 U.S. 41 (1986), *Ben's Bar, Inc. v. Village Somerset*, 316 F.3d 702 (7th Cir. 2003), and *G.M. Enterprises, Inc. v. Town of St. Joseph Wisconsin*, 350 F.3d 631 (7th Cir. 2003).[2] *Id*. at 4.

Despite the new restrictions, Section 2 of Ordinance No. 04-54 carved out an exemption for "any person or entity" granted a special use permit on or before September 15, 2014. *Id*. at 6. Only one adult establishment, PoleKatz, qualified for

---

[2] The Village also cited the minutes of previously conducted public hearings before the Village's Zoning and Planning Commission, as well as the June 6, 1989 Report of the Minnesota Attorney General's Working Group on the Regulation of Sexually Oriented Business, which presented the summaries of secondary effects reports for over 30 communities, including New York, Minneapolis, St. Paul, Indianapolis, Phoenix, and Los Angeles. DSOF [120] Ex. H at 3.

this exclusion.[3] PoleKatz commenced operations in May 2005 and serves alcohol to patrons. DSOF [120] ¶¶ 8-9; PSOAF [134] ¶¶ 5-6, 9-10, 12.

## 2. Ordinance No. 05-11

On April 20, 2005, the Village enacted a companion adult use ordinance, Ordinance No. 05-11. DSOF [120] ¶ 15. Like Ordinance No. 04-54, Ordinance No. 05-11 aimed at ameliorating the secondary effects of adult establishments. *Id.* Ex. I at 2. Ordinance No. 05-11 amended the Village's Zoning Ordinance in two material respects. First, it restricted adult establishments to "I-2A Intensive Industrial District" zones only (hereinafter the "Ordinance No. 05-11 zoning restriction"). *Id.* at 7. Second, it imposed four additional location restrictions prohibiting adult establishments (1) within 1,000 feet of a religious institution; (2) within 500 feet of another adult use; (3) within 1,000 feet of a public park or recreation area, public or private school, nursery or child daycare center; or (4) within 500 feet of any residential use or district zoned for a residential use (hereinafter the "Ordinance No. 05-11 location restrictions"). *Id.* at 7-8. Given the nonconforming use previously established on September 15, 2004, the passage of Ordinance 05-11 did not impact PoleKatz.[4]

---

[3] The same day the Village ratified Ordinance No. 04-54, it approved a settlement agreement for a pending lawsuit with EquiVest, LLC ("EquiVest"). DSOF [120] ¶¶ 5, 10; PSOAF [134] ¶ 1. In the lawsuit, EquiVest alleged that the Village denied it a special use permit for an adult establishment in violation of the First Amendment. DSOF ¶¶ 1-2. Pursuant to the settlement agreement, the Village agreed to deem EquiVest's planned adult establishment a nonconforming use for any future adult use regulations and issue a Class G adult entertainment liquor license to EquiVest. DSOF [120] ¶¶ 6-7; PSOAF [134] ¶ 3. EquiVest now does business as PoleKatz.

[4] Its nonconforming use exemption notwithstanding, based on the Court's review of the record, it appears that the PoleKatz location satisfies the zoning and location restrictions of Ordinance No. 05-11. DSOF [120] Ex. Y.

## B. Plaintiff's Efforts to Open an Adult Establishment

### 1. 7421 West 100th Place

On April 18, 2013, Plaintiff entered into an agreement to acquire real property located at 7421 West 100th Place, within one block of PoleKatz. PSOF [112] ¶ 7. Plaintiff intended to use the 7421 West 100th Place property to open an adult cabaret. *Id.* ¶ 8. According to Plaintiff, its purchase agreement was contingent upon Plaintiff's ability to obtain a liquor license. Second Am. Compl. [69] ¶ 11. On April 29, 2013, Plaintiff applied to the Village for a Class G adult entertainment liquor license for the premises. PSOF [112] ¶ 12, Ex. 7. On May 1, 2013, the Village denied Plaintiff's application. *Id.* ¶ 13, Ex. 8. In the denial, the attorney for the Village cited the Ordinance No. 04-54 alcohol restriction. *Id.* Ex. 8.

On May 15, 2014, Plaintiff submitted a second application for a Class G liquor license. DSOF [120] ¶ 22. On June 5, 2014, the Village denied the second application, again citing the Ordinance No. 04-54 alcohol restriction. *Id.* ¶ 23; PSOF [112] Ex. 3. On June 14, 2013, Plaintiff's contract to purchase 7421 West 100th Place was canceled. PSOF [112] Ex. 10.

### 2. 9800 Industrial Drive

Undeterred, on September 8, 2014, Plaintiff entered into a new purchase agreement to acquire real property located at 9800 Industrial Drive in Bridgeview. PSOF [112] ¶ 21. 9800 Industrial Drive is not located in the I-2A Intensive Industrial District; rather, the property falls in the "I-2 General Industrial District," which, under the Ordinance No. 05-11 zoning restriction, is not zoned for adult use.

DSOF [120] ¶¶ 26-29.  Like 7421 West 100th Place, Plaintiff intended to use the 9800 Industrial Drive property to open an adult cabaret.  PSOF [112] ¶ 22.  On September 17, 2014, Plaintiff submitted its third application for a Class G liquor license.  DSOF [120] ¶ 24, Ex. N.; PSOF [112] ¶ 23.  The third time was not a charm; citing the Ordinance No. 05-11 zoning restriction, the Village Attorney denied the application.  DSOF [120] ¶ 25; PSOF [112] ¶ 27.

### C.     The Present Litigation

On December 11, 2014, Plaintiff filed its Second Amended Complaint in the instant case.  Second Am. Compl. [69].  In it, Plaintiff alleges that Ordinance Nos. 04-54 and 05-11, both facially and as applied, violate the First and Fourteenth Amendments of the United States Constitution.  *Id.*  In Count I, Plaintiff requests declaratory relief under the Declaratory Judgment Act, 28 U.S.C. § 2201 *et seq*.  *Id.* ¶¶ 45-48.  Specifically, Plaintiff requests that this Court declare both ordinances unconstitutional and award "further relief pursuant to 28 U.S.C. § 2202 as this Court may deem appropriate."  *Id.* ¶ 48.  In Count II, Plaintiff requests that this Court permanently enjoin Defendant from enforcing Ordinance Nos. 04-54 and 05-11 against Plaintiff.  *Id.* ¶ 57.[5]

---

[5] Plaintiff's Second Amended Complaint originally contained a third cause of action requesting damages for intentional interference with Plaintiff's business operations.  Second Am. Compl. [69] ¶¶ 58-61.  On December 11, 2014, this cause of action was dismissed.  Min. Entry [70].

### D. Recent Events

On approximately February 17, 2016, the property at 9800 Industrial Drive was conveyed to a different entity. Def.'s Mot. Judicial Notice [162] ¶ 4, Ex. A; Pl.'s Resp. Def.'s Mot. Judicial Notice [168] 2.[6]

On July 20, 2016, the Village enacted Ordinance No. 16-29. Def.'s Mot. Judicial Notice [162] ¶ 5, Ex. B. Section 1 of Ordinance No. 16-29 repealed the Ordinance No. 04-54 location restriction. *Id.* Consequently, adult premises may now be located within 1,000 feet of a premise licensed to serve alcohol beverages. *See id.* The Ordinance No. 04-54 alcohol restriction, Ordinance No. 05-11 zoning restriction, and Ordinance No. 05-11 locations restrictions, however, remain in effect.

## III. Analysis

### A. Standing

Before addressing the merits, the Court must first resolve Defendant's assertions that Plaintiff lacks standing to bring the present case. The Village first claims that, even if Ordinance Nos. 04-54 and 05-11 are declared unconstitutional, 9800 Industrial Drive still falls in the I-2 General Industrial District. Def.'s Mem. Supp. Cross Mot. Summ. J. [118] 6-7. Under a separate Village Ordinance (one not challenged here), a restaurant, bar, nightclub, cabaret, or other similar commercial establishment is not permitted in the I-2 zone. DSOF [120] ¶ 29. According to the Village, given the independent ordinance, a favorable decision regarding Ordinance

---

[6] On August 10, 2016, Defendant's Motion for Judicial Notice [162] was granted without objection. Min. Entry [171].

Nos. 04-54 and 05-11 would put Plaintiff "in no better position vis-à-vis its ability to open a cabaret (adult or otherwise) on [9800 Industrial Drive.]" Def.'s Mem. Supp. Cross Mot. Summ. J. [118] 6-7.

Defendant correctly notes that Article III's standing requirements demand a likelihood that a claimed injury "will be redressed by a favorable decision." *Cabral v. City of Evansville, Ind.*, 759 F.3d 639, 642 (7th Cir. 2014). *North Avenue Novelties, Inc. v. City of Chicago*, however, forecloses the Village's challenge. 88 F.3d 441, 443 (7th Cir. 1996). In *North Avenue*, the Chicago Zoning Ordinance restricted adult uses to Commercial or Manufacturing Districts and further mandated a 1,000 foot buffer from any Residential District. *Id.* The plaintiff's desired location for an adult bookstore fell inside a Planned Manufacturing District ("PMD") (not the same as a Manufacturing District) 825 feet from a residential zone, and thus violated both ordinance provisions. *Id.* Like the case at bar, the plaintiff sought judgment declaring the adult use provisions unconstitutional. *Id.* at 442. Initially, the district court held that the plaintiff lacked standing to assert its claim. *Id.* at 443. The court based its determination upon the fact that, independent of the adult use restrictions, "commercial and retail businesses—adult or otherwise—[were] not permitted to operate in PMD areas." *Id.* As a result, "a determination that the specific adult use provisions were unconstitutional would not change [the plaintiff's] position because the provisions prohibiting commercial operations in PMDs would still preclude the bookstore's operation." *Id.*

On appeal, the Seventh Circuit reversed. Contrary to the lower court's reading, the Seventh Circuit construed the plaintiff's complaint as an attack on the Chicago Zoning Ordinance's "*overall scheme* of limiting adult uses to certain specified areas," not merely a challenge to the specific adult use restrictions. *Id.* at 444 (emphasis added). According to the court, it "would make little sense to read [the plaintiff's] complaint so strictly that it had fully conceded that some provisions of Chicago's Zoning Ordinance could preclude its operation such that it had no case." *Id.* Under this interpretation, the plaintiff "necessarily contend[ed] that the PMD provisions [*in addition to* the adult use elements of the ordinance] contribute[d] to the overall speech restriction." *Id.*

Like in *North Avenue*, the property at issue here does not rest in a region zoned for cabarets (adult or otherwise). Nevertheless, as in *North Avenue*, this Court construes Plaintiff's Second Amended Complaint as challenging the adult use restrictions in *both* the I-2 General Industrial District *and* the I-2A Intensive Industrial District zones. Put another way, Plaintiff's Second Amended Complaint alleges that the Village's *overall* zoning scheme "unconstitutionally limits the total amount of sexually explicit speech." *Id.* at 443-44. Based upon this global challenge to the Village's zoning scheme, Plaintiff maintains standing, at least on this issue.

The Village additionally argues that, because the February 17, 2016 conveyance of 9800 Industrial Drive extinguished Plaintiff's contingency interest in the property, declaratory judgment or injunctive relief "will not redress its injury." Def.'s Reply Supp. Mot. Judicial Notice [170] 1. This time, Defendant is partially

correct. A plaintiff "must demonstrate standing separately for *each form* of relief sought." *Parvati Corp. v. City of Oak Forest, Ill.*, 630 F.3d 512, 516 (7th Cir. 2010) (emphasis added). Moreover, "standing must be present at all stages of the litigation." *Id.* That is, the "requisite personal interest that must exist at the commencement of the litigation . . . must continue throughout its existence[.]" *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 170 (2000) (quoting *Arizonans for Official English v. Arizona*, 520 U.S. 43, 68 n.22 (1997)). When "a party with standing at the inception of the litigation loses it due to intervening events, the inquiry is really one of mootness. Mootness is 'the doctrine of standing set in a time frame: The requisite personal interest that must exist at the commencement of the litigation (standing) must continue throughout its existence (mootness).'" *Parvati*, 630 F.3d at 516 (quoting *Friends of the Earth*, 528 U.S. at 185).

In an action seeking injunctive relief, this principle "ordinarily means that, once the threat of the act sought to be enjoined dissipates, the [claim] must be dismissed as moot." *Brown v. Bartholomew Consol. Sch. Corp.*, 442 F.3d 588, 596 (7th Cir. 2006) (citing *Wernsing v. Thompson,* 423 F.3d 732, 744–45 (7th Cir. 2005)). Here, since Plaintiff no longer owns property for which a liquor license may be obtained, it no longer suffers from the enforcement of Ordinance Nos. 05-54 and 05-11. Although Plaintiff may purchase other Village property in the future, "the mere 'theoretical possibility' of a repeat violation is not enough." *Wernsing*, 423 F.3d at 745 (quoting *Walsh v. United States Dep't of Veterans Affairs,* 400 F.3d 535, 537 (7th

Cir.2005)). Because the sale of 9800 Industrial Drive renders Plaintiff's request for injunctive relief moot, Count II of Plaintiff's Second Amended Complaint [69] is dismissed. As a result, Defendant's Cross-Motion for Summary Judgment [117] as it relates to Count II is denied as moot.

To "the extent that the lawsuit seeks an award of damages for past wrongs," however, "mootness does not pose a problem for the plaintiff." *Lewis v. Tully*, 99 F.R.D. 632, 636 (N.D. Ill. 1983). Here, Count I of Plaintiff's Second Amended Complaint pursues declaratory relief under the Declaratory Judgment Act, 28 U.S.C. § 2201 *et seq*. Pl.'s Second Am. Compl. [69] ¶¶ 45-48. Specifically, Plaintiff requests that this Court declare Ordinance Nos. 05-54 and 05-11 unconstitutional and award "further relief pursuant to 28 U.S.C. § 2202 as this Court may deem appropriate." *Id.* ¶ 48. Under 28 U.S.C. § 2202, "[f]urther necessary or proper relief based on a declaratory judgment or decree may be granted, after reasonable notice and hearing, against any adverse party whose rights have been determined by such judgment." While it "is not the primary function of the court in a declaratory judgment proceeding to award damages," *Sec. Ins. Co. of New Haven v. White*, 236 F.2d 215, 220 (10th Cir. 1956), it is "well settled that 'further relief' may include an award for damages." *Beacon Const. Co. v. Matco Elec. Co.*, 521 F.2d 392, 400 (2d Cir. 1975) (citing *Sec. Ins. Co. of New Haven*, 236 F.2d at 220; *Hudson v. Hardy*, 424 F.2d 854, 855 (D.C. Cir. 1970) ("Money damages may, of course, be awarded in an action for declaratory judgment.")); *Texasteel Mfg. Co. v. Seaboard Sur. Co.*, 158 F.2d 90, 91 (5th Cir. 1946); *St. Paul Fire & Marine Ins. Co. v. Scopia Windmill*

*Fund, LP*, 87 F. Supp. 3d 603, 608 (S.D.N.Y. 2015); *Jordan Mozer & Associates, Ltd. v. Gen. Cas. Co. of Wisconsin*, No. 14-CV-10264, 2015 WL 1911119, at *3 (N.D. Ill. Apr. 24, 2015); *Hammes Co. Healthcare, LLC v. Tri-City Healthcare Dist.*, No. 3:09-CV-2324-GPC-KSC, 2012 WL 6678140, at *4 (S.D. Cal. Dec. 21, 2012); *Consol. Rail Corp. v. Grand Trunk W. R.R. Co.*, No. 09-10179, 2009 WL 3460334, at *18 (E.D. Mich. Oct. 22, 2009); *Brice Bldg. Co. v. Clarendon Am. Ins. Co.*, No. 3:07CV196/EMT, 2009 WL 961176, at *3 (N.D. Fla. Apr. 8, 2009), *aff'd in part, vacated in part, remanded sub nom.* 378 F. App'x 915 (11th Cir. 2010); *cf. All. of Nonprofits for Ins., Risk Retention Grp. v. Barratt*, No. 2:10-CV-1749 JCM RJJ, 2013 WL 3200083, at *4 (D. Nev. June 24, 2013). The Court may grant such monetary relief "whether or not it ha[s] been demanded, or even proved, in the original action for declaratory relief." *Fred Ahlert Music Corp. v. Warner/Chappell Music, Inc.*, 155 F.3d 17, 25 (2d Cir. 1998) (internal quotations omitted); *Lake Effect Inv. Corp. v. Bluso*, No. 1:06-CV-1527, 2007 WL 1231777, at *2 (N.D. Ohio Apr. 25, 2007) ("[T]he request for monetary relief need not have been specifically included in the Complaint as it would have been presumed under the 'further necessary or proper relief' language included in 28 U.S.C. § 2202."). Consequently, Defendant's standing argument, as it relates to Count I, fails.

### B.   Challenges to Ordinance Nos. 04-54 and 05-11

### 1.   Ordinance No. 04-54 Alcohol Restriction

In evaluating the constitutionality of an adult use alcohol restriction, the Court proceeds in two stages. First, the Court asks if the ordinance: (1) is passed

pursuant to a legitimate governmental power; (2) does not completely prohibit adult entertainment; and (3) is aimed at combating the negative secondary effects caused by adult entertainment establishments. *Joelner v. Village of Washington Park, Illinois*, 508 F.3d 427, 431 (7th Cir. 2007), *as am. on denial of reh'g* (Apr. 3, 2008) (citing *44 Liquormart, Inc. v. Rhode Island,* 517 U.S. 484 (1996)). If so, then the ordinance is constitutional as long as it survives intermediate scrutiny, meaning it serves a "substantial governmental interest," is "narrowly tailored," and "reasonable alternative avenues of communication remain available." *See generally Ben's Bar, Inc. v. Village of Somerset*, 316 F.3d 702, 722 (7th Cir. 2003); *accord Joelner*, 508 F.3d at 431. If, on the other hand, the ordinance is not aimed at secondary effects (that is, it fails step three), strict scrutiny applies. *Joelner*, 508 F.3d at 431. This means that the regulation must "be necessary to achieve a compelling state interest and be narrowly drawn to achieve that end." *Id.* (internal quotations omitted).

Here, the Court need not determine whether strict scrutiny is necessary, because the Ordinance No. 04-54 alcohol restriction fails even intermediate scrutiny. Since 2003, the Seventh Circuit has applied intermediate scrutiny to three municipal ordinances banning the sale and consumption of alcohol at adult establishments. First, in *Ben's Bar, Inc. v. Village of Somerset,* the Seventh Circuit upheld an alcohol prohibition passed by the Village of Somerset, Wisconsin. 316 F.3d 702, 728 (7th Cir. 2003). A few months later, the court affirmed a similar ordinance passed by the Town of St. Joseph, Wisconsin. *G.M. Enterprises, Inc. v. Town of St. Joseph, Wisconsin*, 350 F.3d 631, 640 (7th Cir. 2003). Notably, however,

both ordinances banned the sale and consumption of alcohol at *all* adult establishments; neither had exceptions similar to that found in Ordinance No. 04-54. *Ben's Bar*, 316 F.3d at 704; *G.M. Enterprises*, 350 F.3d at 634. In both cases, the court found that the blanket ordinances were narrowly tailored to combat the secondary effects of combining alcohol and adult entertainment. *Ben's Bar*, 316 F.3d at 726-28; *G.M. Enterprises*, 350 F.3d at 637-38. Indeed, in rejecting the argument that the Village of Somerset's alcohol ban was too broad, the *Ben's Bar* court observed that, "as a practical matter, a complete ban of alcohol on the premises of adult entertainment establishments is the *only* way the Village can advance that interest." 316 F.3d at 727 (emphasis in original).

In 2007, the Seventh Circuit considered a third alcohol ban, this time from the Village of Washington Park, Illinois. *Joelner*, 508 F.3d at 429. Unlike its predecessors, however, Washington Park's ordinance exempted *existing* adult establishments (eight in total) from its purview. *Id*. at 430. Based upon this distinction, the district court held that the ban failed intermediate scrutiny. *Id*. at 431. On appeal, the Village cited *Ben's Bar* and argued that, "because [the Seventh Circuit] there determined that a ban on alcohol in both newly and currently licensed adult entertainment establishments passed muster under intermediate scrutiny, [the Village's] ban on alcohol in only newly licensed establishments [could not] possibly be considered less narrowly tailored." *Id*. The Seventh Circuit rejected the Village's reasoning, holding that "an underinclusive regulatory scheme is not narrowly tailored." *Id*. (citing *Rubin v. Coors Brewing Co.,* 514 U.S. 476, 489 (1995);

*City of Cincinnati v. Discovery Network, Inc.,* 507 U.S. 410, 425 (1993)). According to the court, "the ordinance permanently insulates eight concentrated establishments from the alcohol ban and leaves alcohol use at those establishments otherwise entirely unrestricted." *Id.* (emphasis removed). Such underinclusiveness betrayed the Village's purported interest in curbing the secondary effects of adult entertainment. To the contrary, potential customers "would just migrate to the establishments exempted from the alcohol ban rather than go away." *Id.* at 432. The court noted that none of the authorities cited in the ordinance's preamble rebutted this conclusion. *Id.* at 433. As a result, "the Ordinance could not survive." *Id.*[7]

Here, the Village of Bridgeview, like the Village of Washington Park, has enacted an underinclusive partial ban upon the sale and consumption of alcohol at adult establishments. In an attempt to distinguish *Joelner*, Defendant focuses on the number of exempted entities: eight in *Joelner* versus one here. The Court views the contrast as a technical distinction without a meaningful difference. As in *Joelner*, none of authorities cited in Ordinance 04-54's preamble support the utility of a fragmented alcohol ban, regardless of the number of exemptions. To the contrary, the relevant cases cited by the ordinance—*Ben's Bar* and *G.M. Enterprises*—both involved *complete* alcohol bans.[8] Moreover, *Ben's Bar* explicitly

---

[7] More recently, the Seventh Circuit also analyzed alcohol regulations passed by the Village of Dix, Illinois. *Foxxxy Ladyz Adult World, Inc. v. Vill. of Dix, Ill.*, 779 F.3d 706, 717 (7th Cir. 2015). Those ordinances, however, did not single out adult establishments, but rather applied broadly to all public accommodations. *Id.* at 719. As a result, the court applied only rational basis review.

[8] The third case cited, *Renton v. Playtime Theaters*, 475 U.S. 41 (1986), involved location restrictions, not an alcohol ban.

stands for the proposition that "as a practical matter, a complete ban of alcohol on the premises of adult entertainment establishments is the *only* way" to effectively combat "the secondary effects resulting from the combination of nude and semi-nude dancing and alcohol consumption." 316 F.3d at 727 (emphasis in original). Therefore, if, as Ordinance No. 04-54 contends, "the sale and consumption of alcoholic beverages on the premises of an adult use" truly "exasperates the adverse secondary effects of such businesses," there is no principled reason, at least on this record, for exempting the adult establishment that has operated in the Village for the past twelve years. DSOF [120] Ex. H at 4.

Lacking support for Ordinance No. 04-54 in this circuit, Defendant turns to the Fourth Circuit and *Imaginary Images, Inc. v. Evans*, 612 F.3d 736 (4th Cir. 2010). In *Imaginary Images*, three adult establishments challenged Virginia's state alcohol licensing program, which allows such establishments to serve beer and wine but not mixed beverages. *Id.* at 740. The court upheld the alcohol restrictions, despite the fact that the state did not produce empirical studies showing that a ban on *only* mixed beverages at sexually oriented businesses reduced secondary effects. *Id.* at 744. Far from limiting *Joelner*, however, the Fourth Circuit reaffirmed the Seventh Circuit's analysis. The court reasoned that it is one thing to challenge the efficacy of a statute, like the adult establishments did in *Imaginary Images*. *See id.* at 744-45. It is quite another to, as in *Joelner*, challenge a statute for advantaging certain speakers (existing adult establishments) to the detriment of others (new ones). *Id.* at 744-45 n.2.

For these reasons, Plaintiff's Motion for Summary Judgment [100] on Count I, as it specifically relates to the Ordinance No. 04-54 alcohol restriction, is granted. This Court declares that Ordinance No. 04-54, Section 1, Article 10-52-3 is unconstitutional. The Court declines, however, to invalidate Ordinance No. 04-54 in its entirety. Article 10-52-3 can be severed from the remainder of Ordinance No. 04-54, which imposes discrete, separate requirements that can stand on their own. *See* Ordinance No. 04-54, Section 3 (severance clause); *Pleasureland Museum, Inc. v. Beutter*, 288 F.3d 988, 1004-05 (7th Cir. 2002) (analyzing severance clauses, and severing discrete clauses); *Schultz v. City of Cumberland*, 228 F.3d 831, 853-54 (7th Cir. 2000) (same).

## 2. Ordinance No. 05-11 Zoning and Location Restrictions

The framework for analyzing adult use location restrictions derives from the Supreme Court's decisions in *City of Renton v. Playtime Theatres, Inc.,* 475 U.S. 41 (1986), and *City of Los Angeles v. Alameda Books, Inc.,* 535 U.S. 425 (2002). *BBL, Inc. v. City of Angola*, 809 F.3d 317, 323 (7th Cir. 2015) (discussing framework). The *Renton* analysis instructs courts to consider: (1) whether the regulations constitute an invalid total ban or merely time, place, and manner regulations; (2) whether the regulations are content-based or content-neutral, and accordingly, whether strict or intermediate scrutiny is to be applied; and (3) if content-neutral, whether the regulation is designed to serve a substantial government interest and allows for reasonable alternative channels of communication. *R.V.S., L.L.C. v. City of Rockford*, 361 F.3d 402, 407 (7th Cir. 2004). In this context, the "content-neutral"

label "is a misnomer; regulations aimed at adult businesses apply to certain types of speech and not others." *BBL*, 809 F.3d at 323; *Alameda Books,* 535 U.S. at 448 (Kennedy, J., concurring) ("These ordinances are content based and we should call them so."). Thus, "*Renton*'s second step is best conceived as an inquiry into the *purpose* behind an ordinance rather than an evaluation of an ordinance's form." *R.V.S.*, 361 F.3d at 407 (emphasis added). Ultimately, "regulations of adult entertainment receive intermediate scrutiny if they are designed not to suppress the 'content' of erotic expression, but rather to address the negative secondary effects caused by such expression." *Ben's Bar,* 316 F.3d at 723. Only after confirming this purpose does the Court "employ *Renton*'s intermediate scrutiny test." *R.V.S.*, 361 F.3d at 408. Once a municipality advances "some basis to show that its regulation has the purpose and effect of suppressing secondary effects, (i.e., is designed to serve or furthers a substantial or important government interest)" all that remains is a determination of whether the regulation leaves "the quantity and accessibility of speech substantially intact (i.e., the regulation is narrowly tailored and does not unreasonably limit alternative avenues of communication)." *Id*.

The accessibility requirement "isn't terribly onerous. Time, place, and manner restrictions obviously 'limit or foreclose some avenue of communication; the question is whether there are other adequate means of dissemination.'" *BBL* 809 F.3d at 328 (quoting *Matney v. County of Kenosha,* 86 F.3d 692, 698 n.4 (7th Cir.1996)). Absent a total ban, no particular restrictions—individually or collectively—are unreasonable *per se.* Rather, the "scheme" as a whole, "as it is

applied to [the municipality's] geographic area, must be considered." *North Avenue*, 88 F.3d at 444; *see also Chicago Joe's Tea Room, LLC v. Vill. of Broadview*, No. 07-CV-2680, 2009 WL 3151856, at *3 (N.D. Ill. Sept. 25, 2009) (applying "fact-specific approach to adult use zoning adjudication"). The "primary concern of the free speech guarantee is that there be full opportunity for expression in all its varied forms to convey a desired message [and] that there be full opportunity for everyone to receive the message." *Young v. Am. Mini Theatres, Inc.*, 427 U.S. 50, 76 (1976) (Powell, J., concurring). To this end, "standing alone," the mere amount of acreage available for adult use "is largely irrelevant." *North Avenue*, 88 F.3d at 445. The Constitution "does not mandate that any minimum percentage of land be made available for certain types of speech." *Id.*

Rather, "it is necessary to focus both on the ability of producers as a group to provide sexually explicit expression, as well as on the ability of the public as a whole to receive it." *Id.* at 444. What the Constitution requires "is that zoning schemes that regulate the location of speech provide a 'reasonable opportunity' to disseminate the speech at issue." *Id.* at 445 (citing *Renton,* 475 U.S. at 52; *Young*, 427 U.S. at 58). For this analysis, multiple circuits, including our own, have emphasized a "supply and demand" style inquiry. Under this test, an ordinance is constitutional "only if as a matter of arithmetic . . . there are more 'reasonable' sites available than businesses with demands for them." *Fly Fish, Inc. v. City of Cocoa Beach*, 337 F.3d 1301, 1309 (11th Cir. 2003) (quoting *Lakeland Lounge of Jackson, Inc. v. City of Jackson, Miss.,* 973 F.2d 1255 (5th Cir.1992)); *North Avenue*, 88 F.3d

at 445 (upholding location restrictions where there "was no evidence that any person has attempted to open an adult use, but was prevented from doing so"); *Topanga Press, Inc. v. City of Los Angeles,* 989 F.2d 1524, 1532-33 (9th Cir. 1993) (invalidating adult business ordinance where the total number of adult businesses that could coexist was fewer than the number of existing establishments). Here, other elements of the *Renton/Alameda Books* inquiry aside, genuine disputes exist as to (1) the number of adult use sites available; and (2) the reasonableness of those sites.

To begin, Plaintiff claims that District I-2A, the only zone eligible for adult establishments, includes twenty-one parcels of real property; Defendant believes there are twenty-two.[9] PSOF [112] ¶ 31; R. PSOF [119] ¶ 31; DSOF [120] Ex. Y. Plaintiff further avers that, when the Ordinance No. 05-11 location restrictions are applied, "there are no available sites in District I-2A after assessing all available acreage." Pl.'s Mem. Supp. Mot. Summ. J. [102] 14. In contrast, Defendant opines

---

[9] Plaintiff supports its evaluation of District I-2A with multiple map images and distance calculations made via "Google Earth." *See generally*, PSOF ¶¶ 32-79. Defendant objects to Plaintiff's supporting material on the basis of hearsay, foundation, and reliability. *See generally* R. PSOF ¶¶ 32-79. Because a bare satellite image, "like a photograph, makes no assertion," it does not constitute hearsay. *United States v. Lizarraga-Tirado*, 789 F.3d 1107, 1109 (9th Cir. 2015). To the extent markers and labels are added, courts in this circuit have taken judicial notice of distances computed through satellite imagery. *Cloe v. City of Indianapolis*, 712 F.3d 1171, 1177 (7th Cir. 2013), *overruled on other grounds by Ortiz v. Werner Enterprises, Inc.*, – F.3d –, No. 15-2574, 2016 WL 4411434 (7th Cir. Aug. 19, 2016) ("We have taken judicial notice of—and drawn our distance estimates from—images available on Google Maps, 'a source whose accuracy cannot reasonably be questioned, at least for the purpose of determining' general distances.") (quoting *United States v. Perea–Rey*, 680 F.3d 1179, 1182 n.1 (9th Cir. 2012)). Therefore, Defendant's objections are overruled.

that there are two sites available: "portions" of parcels it identifies as "Parcel 20" and "Parcel 9."[10] DSOF Ex. Y at 9.

In addition to these disagreements, Plaintiff claims that The Muslim American Society occupies a building within 1,000 feet of Parcel 20, thus violating Ordinance No. 05-11's minimum distance requirements related to "religious institutions." PSOF ¶¶ 75, 79. In response, Defendant contests that the Muslim American Society's use of the property falls within the definition of a "religious institution." R. PSOF. ¶ 76. Even after resolving factual uncertainties and drawing all reasonable inferences against each respective movant, the present record is insufficient to resolve this discrepancy. Plaintiff merely presents photographs of the Muslim American Society location, PSOF [112] Ex. 54; Defendant only provides testimony regarding its layout. R. PSOF [119] Ex. 7 ¶¶ 4-10. As a result, this Court cannot, as a matter of law at this stage, rule in favor of either party.

Moreover, even assuming, *arguendo*, that Plaintiff's argument prevailed, Plaintiff fails to show what percentage of Parcel 20 falls within the minimum distance requirement and is thus disqualified from adult use. Conversely, after following Defendant's logic, it is equally unclear what portion of Parcel 20 satisfies all of Ordinance No. 05-11 precepts; the Village simply concludes that the site "would be large enough for any adult use in current operation." DSOF Ex. Y at 9.

---

[10] The Village could have argued (but did not) that it can piggyback off available locations in neighboring municipalities. Justice Blackmun was skeptical of such an approach in his concurrence in *Schad v. Mt. Ephraim*, 451 U.S. 61, 64 (1981). The Seventh Circuit expressed some support for the argument in *Illinois One News, Inc. v. City of Marshall, Illinois*, 477 F.3d 461, 463-64 (7th Cir. 2007), though it ultimately found it unnecessary to "reach closure on this subject." This Court adopts equal restraint, given the Village's silence on the issue.

Similar ambiguity surrounds Parcel 9.  Defendant admits that most of Parcel 9 falls within 500 feet of PoleKatz, but nevertheless asserts that the lot "could accommodate a smaller adult use if subdivided."  *Id.*  While Defendant supplies the square footage for Parcel 9 *as a whole*, it does not quantify, however, the supposedly eligible subsection.  *Id.*  Likewise, Plaintiff, which contests the adequacy of the parcel, does not present any data in its own right.

Finally, square footage aside, neither party presents evidence regarding other details of the contested parcels—accessibility, divisibility, etc.—that might determine their adequacy in supporting adult expression.

In sum, the current record leaves too many factual questions unanswered for this Court to provide a legitimate determination as to whether District I-2A provides a 'reasonable opportunity' to disseminate adult speech.  As such, at this juncture, it cannot conduct a proper *Renton/Alameda Books* analysis to ascertain whether Ordinance No. 05-11 violates the First Amendment.  Therefore, both summary judgment motions as they relate to Ordinance No. 05-11 are denied.

## IV.    Conclusion

Plaintiff's Motion for Summary Judgment [100] on Count I as it specifically relates to the Ordinance No. 04-54 alcohol restriction is granted. The Court declares Ordinance No. 04-54, Section 1, Article 10-52-3 unconstitutional. The Court declines, however, to invalidate Ordinance No. 04-54 in its entirety. Article 10-52-3 can be severed from the remainder of Ordinance No. 04-54, which imposes discrete, separate requirements that can stand on their own.

Plaintiff's Motion for Summary Judgment [100] on Count I as it specifically relates to Ordinance No. 05-11 is denied. Defendant's Cross-Motion for Summary Judgment [117] as it relates to Count I is denied.

Count II of Plaintiff's Second Amended Complaint [69] is dismissed. Defendant's Cross-Motion for Summary Judgment [117] as it relates to Count II is denied as moot.


IT IS SO ORDERED

Dated:  September 26, 2016

Entered:

John Robert Blakey
United States District Judge